The Chicago, Burlington and Quincy Railroad Company

*v.*

The City of Chicago.

*Filed at Ottawa October 31, 1890.*

Contract—*use of street for railway purposes—agreement by company to indemnify the city against liability to individuals.* A railway company accepted the provisions of a city ordinance giving it permission to lay its tracks along a certain street on the condition it.should pay the city for the erection of a viaduct over the street, which would be made necessary by the construction and operation of the road, and should indemnify the city from any and all legal damages, judgments, decrees, and costs and expenses of the same, which it might suffer, or which might be recovered or obtained against said city for or by reason of the granting of such privileges and authority, or resulting from the passage of the ordinance, or any matter or thing connected therewith. The city built the viaduct, and the owner of lots recovered $10,000 damages against the city for injury to the same by destroying the means of ingress and egress to and from the lots: *Held,* that the railway company was liable to the city for the amount so recovered for the damage resulting to the property owner by reason of the construction of the viaduct.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. A. N. Waterman, Judge, presiding.

This was a suit instituted by the city of Chicago against the Chicago, Burlington and Quincy Railroad Company, to recover upon an alleged contract of indemnity entered into by the company. The grounds of the action are set forth in the opinion.

Messrs. Dexter, Herrick & Allen, for the appellant.

Mr. Francis Adams, for the appellee.

Mr. Justice Wilkin delivered the opinion of the Court:

On the 8th day of April, 1884, Nathan Mears brought suit against the city of Chicago, in the Superior Court, alleging in his declaration that he was the owner of certain real estate in said city, to which Polk street furnished a convenient means of ingress and egress, and that the city had caused to be constructed upon and along the said street, and had maintained thereon, an embankment, obstructing such ingress and egress by means of the said street, thereby damaging said property. On a trial he obtained a judgment for $10,000, and costs of suit, which the city afterward paid. This action is brought to recover the amount of that judgment. In the trial court plaintiff had judgment for $12,534, and costs, which was affirmed by the Appellate Court. Appellant now brings the record to this court.

The liability of appellant is based on the following ordinance passed by the city council of the city of Chicago, December 20, 1880:

"An ordinance granting permission to the Chicago, Burlington and Quincy Railroad Company to construct tracks between West Harrison and West Twelfth streets.

"*Be it ordained by the City Council of the City of Chicago:*

"Section 1. That permission and authority be and are hereby granted unto the Chicago, Burlington and Quincy Railroad Company to lay down, maintain and operate one or more railroad tracks on the property owned or hereafter to be acquired by them, between West Harrison street on the north and West Twelfth street on the south, and the tracks of the Pittsburgh, Fort Wayne and Chicago Railway Company on the east and Canal street on the west, and for that purpose to extend such tracks across intervening streets, together with all such turn-outs, switches, turn-tables and other structures as may be deemed necessary to accommodate the business to be done over said tracks.

"Sec. 2. Said railroad company shall also have the right to run its trains from its present depot grounds on Sixteenth street, over the tracks of the Pittsburgh, Fort Wayne and Chicago Railway Company located on and adjoining Beach street and Stewart avenue, to and on to the depot grounds mentioned in said section 1, and to the depot grounds of said last named company, situated between Madison and Harrison streets; and if, at any time hereafter, the facilities offered by the Pittsburgh, Fort Wayne and Chicago Railway Company for such track service shall be deemed inadequate to accommodate the business of the companies using the same, and the Chicago, Burlington and Quincy Railroad Company shall purchase or lease other right of way near to or adjoining said tracks on the west, between Sixteenth and Twelfth streets, permission is hereby granted to said last named company to lay one or more tracks on the same, and to cross the intervening streets.

"Sec. 3. The permission and authority hereby granted are upon the express conditions that the said railroad company shall pay, or cause to be paid, to the city of Chicago, the cost and expense of constructing and erecting a new viaduct on Polk street, over the railroad tracks crossing said street, between Canal street and the Polk street bridge, together with all proper lateral and other approaches necessary thereto, the money necessary therefor to be paid by said company, as aforesaid, as fast as required by the city in paying for the construction and erection of said viaduct and the lateral and other approaches thereto, and shall maintain and keep the same in repair without expense or cost to the city of Chicago, such construction, maintaining and keeping in repair to be done pursuant to the direction of the city council, under the supervision of the commissioner of public works. And the permission and authority hereby granted are upon the further express condition, that the said railroad company shall pay to the city of Chicago the expense of constructing, erecting, maintaining and keeping in repair viaducts over any of its said

tracks on any street or streets crossed by its tracks, except said Polk street above provided for, with proper approaches thereto, as the city council may, from time to time, require: *Provided, however,* that when any such viaduct, except said Polk street viaduct above provided for, can not be constructed across the tracks of said railroad company without crossing the track or tracks of some other railroad company or companies,. the said Chicago, Burlington and Quincy Railroad Company shall only be obliged to join such other railroad company or companies in paying the expense of erecting, constructing, maintaining and keeping in repair such viaduct and approaches, and to pay its fair proportion of such expense, as between it and such other company or companies; and if such other railroad company or companies shall not join said Chicago, Burlington and Quincy Railroad Company in paying said expense, then, when the proportion of said other company or companies shall be otherwise provided, the said Chicago, Burlington and Quincy Railroad Company shall pay what would be its fair proportion of said expense in case such other company or companies should join with it in the payment of said expense, as aforesaid,—said viaduct or viaducts, and approaches thereto, to be constructed according to the plans and specifications of the department of public works. Said Chicago, Burlington and Quincy Railroad Company shall furnish sufficient outlets for the private property bounded by Harrison, Twelfth, Beach streets, and the south branch of the Chicago river.

"Sec. 4. The permission and authority hereby granted are upon the further express condition, that the said railroad company shall and will forever indemnify and save harmless the city of Chicago against and from any and all legal damages, judgments, decrees and costs, and expenses of the same, which it may suffer, or which may be recovered or obtained against said city, for or by reason of the granting of such privileges and authority, or for or by reason of, or growing out of or

resulting from, the passage of this ordinance, or any matter or thing connected therewith, or with the exercise by said company of the privileges hereby granted, or from any act or acts of said company under or by virtue of the provisions of this ordinance.

"Sec. 5. This ordinance shall take effect and be in force from and after its passage."

At the meeting of the council next after the passage of this ordinance, held on the 27th of December, 1880, an order for the construction of a viaduct, and approaches thereto, on Polk street, was presented, and referred to a committee on streets and alleys. March 2, 1881, on a report of that committee, the order was passed, and a viaduct on Polk street was constructed in pursuance thereof. In making the approaches to that viaduct, the embankment for which Mears recovered damages from the city, was made.

The only question presented for our decision is, can the city, under the provisions of the ordinance of December 20, demand from appellant indemnity against these damages, under the provisions of section 4 of that ordinance. If it can be successfully maintained that the judgment obtained by Mears against the city was recovered for damages growing out of or resulting from the passage of said ordinance, then, by the express terms of that section, appellant is bound to indemnify the city against such judgment.

If there is any uncertainty in the language of section 4, it is the result of an effort to make it exceedingly comprehensive and definite, by using more words than were necessary. Its plain meaning, when applied to the facts of this case, is, that the railroad company shall indemnify the city against all legal damages recovered against it by reason of its granting the privileges mentioned in the former sections.

We do not regard the words, "or any matter or thing connected therewith," as of importance in the decision of this case, though much of the argument is devoted to a discussion of their meaning. Especially is it unimportant what the word

"therewith" refers to.  Whether we say, "from the ordinance," or "from the passage of the ordinance," the meaning here is the same, viz., the granting "permission and authority" by the first and second sections.  It is not necessary that the damages recovered from the city should be the direct and immediate consequence of the granting of that permission, to make the railroad company liable.  If they are such as reasonably grow out of or result therefrom, the company is responsible.  Therefore, although the Polk street viaduct was built by the city under an independent order, and although the ordinance of December 20 does not, in terms, require it to be built, still, if it sufficiently appears that the parties contemplated its erection as one of the results of the passage of the ordinance, the liability must be held to attach.  Whatever else they may have contemplated as damages which might result from the passage of the ordinance, for which the city would be liable, it is certainly clear that they did understand that one of the results,—one of the things growing out of it,—would be the building of a Polk street viaduct.  By section 3 the company is required to pay, or cause to be paid, to the city, the cost and expense of constructing and erecting such a viaduct, and if it be conceded that this section created no obligation on the part of the city to cause it to be built, still, it must be admitted that it does show that both the city and railroad company contemplated that it would be built, as a result of the permission granted.

. While it is true, that by reason of the tracks of other railroads crossing this street, and the running of trains thereon, there was, at the time of the passage of the ordinance, more or less of necessity for a viaduct over it, it is not true, as insisted on behalf of appellant, that the one built was not made necessary by the permission to appellant to put additional tracks and run additional trains across it.  The permission and authority, by this ordinance, to appellant, to further obstruct said street by tracks and trains, made it necessary for

the city to make the viaduct, and both parties recognized that fact by section 3.

In our opinion it is impossible to read this record without arriving at the conclusion that the building of the viaduct followed as one of the contemplated results of the act of the city council in permitting appellant to construct its tracks and move its trains across Polk street.

It is not pretended that the elevation of the grade of that street, for which Mears recovered judgment, was not made necessary by the building of the viaduct; but it is insisted that this construction will, or may, result in injustice to appellant should the city council require viaducts to be built over other streets, as provided in section 3, and by so doing it should become necessary to cross other tracks than those of appellant, the argument being, that while in such case, by the terms of the ordinance, appellant would only be bound to pay its proportionate part of the cost of erecting the viaduct, this holding would make it liable for the entire damages to property holders resulting from such erection. If it should, in such case, turn out that the city held no indemnity contracts from the owners of other tracks, appellant might be held so liable, and if it should, as between it and such other owners the result would certainly be unjust. Still, that possible result affords no sufficient reason for rejecting the reasonable, and, as we think, obvious, construction of the ordinance, as between appellant and the city. Nor do we find anything in the prior action of the city council, shown by the record, inconsistent with this holding.

The rules of law laid down by counsel for appellant for the construction of ordinances, statutes and contracts, are not questioned, but so far as they are properly applicable to this case they sustain our conclusion.

The judgments of the circuit and Appellate Courts will be affirmed.

*Judgment affirmed.*