83   233
s183s341

## Chicago, M. & St. P. Ry. Co. and Chicago, St. L. & P. R. R. Co. v. The City of Chicago.

1.  ESTOPPEL—*To Raise the Question of Several Liability.*—Where a city has a right of action against two railroad companies, severally, to reimburse itself for damages paid in satisfaction of a judgment rendered against it in favor of a property owner for damages sustained by reason of the construction by the railroad companies of approaches to a viaduct, such companies may by agreement consent to a joint proceeding against them by the city to determine their liability, and so estop themselves from raising the question as to the regularity of such proceedings.

2.  FRANCHISES—*Sales—What the Purchaser Takes.*—It is not permissible for the purchaser of the franchises or easements of a railroad corporation, granted or acquired for a public purpose, to take and hold the privileges freed from the public duty imposed as the condition of the grant.

Assumpsit, on a contract of indemnity.  Trial in the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Finding and judgment for plaintiff; appeal by defendants. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed May 26, 1899.

**Statement of Facts.**—The city of Chicago sued the appellants jointly, in assumpsit, to recover the amount paid by it in satisfaction of a judgment rendered in favor of a property owner and against the city, for land damages sustained by the land owner by reason of the construction of the south approach to Western avenue viaduct.

The viaduct, having both approaches in Western avenue, extended over Kinzie street, in which are located two tracks of the Northwestern road, two tracks of the appellant Milwaukee & St. Paul road, and three tracks of the appellant Pittsburg road. Two additional tracks of the last named road lie to the south of its tracks in Kinzie street, upon its private property, the viaduct extending over all nine tracks.

The rights of the appellants in Kinzie street were granted by two separate ordinances of the city. One of said ordinances contained a direct grant to the appellant Milwaukee & St. Paul road. The other ordinance contained a grant to the Columbus, Chicago & Indiana Central Railway Company, by whom the last mentioned five tracks were laid and for a time operated. Afterward, the appellant Pittsburg company, by foreclosure and *mesne* conveyance, became successor to the Columbus, Chicago & Indiana Central Railway Company, and thereafter owned and operated said five tracks.

Each of said ordinances contained the following conditions:

" The permission and authority herein granted are upon the express condition that the said Chicago, Milwaukee & St. Paul Railway Company shall annually, from the passage of this ordinance, erect and maintain two viaducts in each year over its said tracks, and the board of public works shall, in each year, on or before the first day of January, designate the streets over which such viaducts and approaches to said viaducts shall be constructed and maintained, the same to be built in such manner as the said board of public works shall direct; provided, however, that the

said viaduct or viaducts shall have approaches thereto, on each side thereof, with the proper area on either side of said approaches; said approaches to have an elevation of not more than one foot to every forty feet in length thereof, and that said approaches to said viaducts shall likewise be erected and built by and at the expense of said railroad company.   *   *   *

Sec. 5.   The permission and authority hereby granted are upon the further express condition that the said Chicago, Milwaukee & St. Paul Railway Company shall and will forever indemnify and save harmless the city of Chicago against and from any and all damages, judgments, decrees and costs and expenses of the same which it may suffer or which may be recovered or obtained against said city for or by reason of the granting of such privileges and authority, or for or by reason of, or growing out of, or resulting from the passage of this ordinance, or any matter or thing connected therewith, or with the exercise by said company of the privileges hereby granted."

There was contained in the ordinance to the Columbus, Chicago & Indiana Central Railway Company, the following provision, which was not in the ordinance to the Milwaukee & St. Paul Company:

" Provided, however, that where any such viaduct can not be, built at any such street crossing without the same be built over the track or tracks of some other railroad company or companies, then said company shall only be obliged to join with such other last mentioned railroad company or companies in the construction and maintenance of such viaduct, and to pay its fair proportion of the cost of such viaduct or viaducts, and if such other railroad company or companies shall not join in the erection of any such viaduct then, if the proportion of such other company or companies shall be otherwise provided, the said Columbus, Chicago & Indiana Central Railway Company shall pay its fair proportion of the cost of any such viaduct."

Several years after the granting of said ordinances the the city desired that the viaduct in question should be constructed, and gave a separate notice to each appellant to commence, on January 2, 1888, the construction of such viaduct and approaches thereto, in accordance with the respective ordinances, and in accordance with plans and specifications in the office of the city engineer.

Negotiations presumably ensued, and on May 18, 1888, a contract between the appellants as first and second parties, respectively, and the city as third party, was entered into. Such contracts recited the substance of the material facts, in respect of the matter in hand, of the said ordinances, and then stated the agreement to be as follows:

" 1st. The said viaduct shall be constructed over the tracks of the first and second parties where the same are intersected by Western avenue.

2d. Said viaduct shall be constructed at said Western avenue in accordance with plans which are hereto attached and made a part of this agreement, the same having been agreed upon and approved by the engineers of the several parties to this agreement. The city of Chicago shall advertise for the letting of the contract for the construction of said viaduct and the approaches thereto, and let the contract to the lowest responsible bidder. The commissioner of public works shall have the right to reject any and all bids, and to re-advertise the same. The parties of the first and of the second part shall each have the right to bid on said contract.

3d. The work to be done upon and in connection with said viaduct and approaches shall be under the supervision and control of the commissioner of public works of the city of Chicago.

4th. The parties of the first and second part shall pay the entire cost of each of the south and north abutments and approaches thereto of the viaduct hereinbefore provided for at Western avenue, and shall also pay the entire cost of so much of said viaduct as may be constructed from the south and north abutments and approaches over the tracks and right of way of each of the parties of the first and second part; and the said parties of the first and second part will also pay the cost of engineering, of inspection of material and work, and the necessary expense of specifications and blue-prints, in the manner hereinafter provided; and the city of Chicago agrees that the viaduct over the tracks and the right of way of the Chicago & Northwestern Railway Company shall be constructed without any expense whatever to either the first or second party.

5th. The payment herein provided to be made by the parties of the first and second part shall be as follows: The payment for the two approaches, abutments and piers at the north and south sides of said viaduct, and the cost and ex-

pense of the construction of so much of said viaduct as may be constructed from the north and south abutments and approaches over the tracks and right of way of each .of the parties of the first and second part, also the cost of the engineering, inspection of material and work, and expense of specifications and blue-prints shall be made from time to time as the work progresses, to the holder of certificates of the city engineer of the city of Chicago, which certificates shall specify the amount in each certificate to be paid thereon.

6th.   And inasmuch as the parties of the first and second part deny that under the ordinance hereinbefore referred to, they are liable to pay any land damages that may be recovered by reason of the erection and completion or construction of said viaduct, or any of the approaches leading thereto, at the street above named, it is agreed that the question whether the parties of the first and second part are liable to pay any land damages that may result in consequence of the construction of any viaduct, or any of the approaches, at the street above named, shall be determined by judicial proceedings, if the city of Chicago shall so elect, and if, upon final judgment, it shall be determined that under the ordinances aforesaid, or otherwise, the said parties of the first and second part are liable for the land damages aforesaid, then the parties of the first and second part agree that they will pay to the city of Chicago whatever sum the city of Chicago may have paid for land damages, or interest and costs, or any judgment obtained. therefor, caused by the construction of said viaduct and the approaches thereto.''

George Willard, attorney for appellant, C., St. L. & P. R. R. Co.

Charles B. Keeler, attorney for appellant, C., M. & St. P. Ry. Co.; Geo. R. Peck, of counsel.

Charles S. Thornton and Samuel .A. Lynde, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the court.

The case was tried before the court without a jury, and from a finding and judgment for $2,175.50 against the appellants and in favor of the city, this appeal is prosecuted.

There is no material dispute about the facts.

The main contention is that there is no joint liability by the appellants, and that the action against them jointly was improper.

Prior to the making of the contract of 1888, each appellant company was, severally, expressly bound by the conditions of the ordinance under which it was operating its tracks in and upon Kinzie street and across Western avenue, to build the viaduct in question, and the approaches thereto on each side.

The only difference between their several liability in such respect was that the appellant Pittsburg company was only required to pay its fair proportion of the cost of the viaduct proper, whenever a viaduct should necessarily extend over the tracks, also, of another railroad company. Each appellant was liable for the entire cost of the approaches, and the viaduct also, except in the particular case just mentioned in favor of the appellant Pittsburg company.

And so was each company severally bound to indemnify the city and save it harmless against any and all damages, judgments, etc., by reason of the erection of all viaducts, including this one, and the approaches thereto. It was then the right of the city to call upon either or both of the appellants as was done, to construct this viaduct, and it is plain that they were then each liable in a several action, upon their obligations imposed by the ordinances and accepted by them.

Under such circumstances the contract of 1888 was entered into.

Then, for the first time, appellants assumed in some respects a joint contractual duty. What had theretofore been the several duty of each appellant, under their respective ordinances, to build the viaduct and approaches, was then agreed should be done by the city at their expense, and then the question of land damages being apparently raised, they agreed that if the city should have to pay any such damages, for which under the ordinances they were liable, they would reimburse the city to the extent of such payment.

The liability of appellants for land damages, by reason of the construction of the viaduct and its approaches, arose out of or was created by the ordinances, either expressly or by implication. C., B. & Q. R. R. Co. v. City of Chicago, 134 Ill. 323.

Had the contract of 1888 been silent as to land damages, the incidental would have followed the main contract liability created by the ordinances. It was not necessary for any new obligation in such respect to have been created by the contract, and none such was created. Although the contract recited a denial by appellants of their liability for land damages, it, however, in no manner altered the law or the fact in that regard, and probably served no useful purpose, unless to negative some possible presumption or inference concerning their liability for such damages, or to serve as an introduction to their ensuing agreement to jointly indemnify the city to the extent it might have to pay such damages, if, notwithstanding their contention to the contrary, they should be held to their liability for land damages.

Judicial proceedings having determined the city's liability for such damages, and the city having paid them, appellant's agreement ripened, and the city's right to an action became perfect.

The obvious purpose of the sixth clause of the contract of 1888, and the only one that we can detect, was to substitute for the already existing several obligations of each of the appellants, their joint obligation in such respects. By it, what each was severally liable for before, was changed to a joint liability for. By it there was a waiver of appellants' previous right to be sued severally, and they ought to be treated as having estopped themselves from now asserting such earlier right. It is difficult to say what more apt words could have been employed to make the ·agreement a joint one than were used. Whether appellants were legally bound to pay land damages, severally or jointly, was their right to have settled by legal proceedings, no matter how plain their duty was in that regard, and the

only reasonable interpretation to be put upon the sixth clause of their contract of 1888 is that they thereby consented to have such proceedings prosecuted against them jointly instead of severally, as, without the agreement, must have been done.

The right by the city to a several action against each of them already existed. Why contract anew that it should exist? Parties will not be considered as contracting idly.

The judicial proceedings which the contract of 1888 provided might, at the election of the city, be brought to determine the question of the liability of the appellants, were instituted by this joint action against the appellants, and, without intervening error of any substantial kind, it has been determined adversely to the appellants.

Counsel for the appellant Pittsburg company, makes the particular point that as between it and the city there is not any privity of contract or estate.

That company, as already said in the statement of facts, became successor to the Columbus, Chicago & Indiana Railway Company, to whom and to its successors the ordinances gave permission and authority to lay and operate tracks in said Kinzie street.

Counsel argue that because the conditions (concerning viaducts and indemnifying the city) of granting such permission and authority, do not in terms purport to bind the successors of the Columbus company, they are personal to that company and do not bind the Pittsburg company.

We regard the point as more ingenious than sound. It is not permissible for the purchaser of the franchises or easements of a railroad corporation, granted or acquired for a public purpose, to take and hold the privileges freed from the public duty imposed as the condition of the grant.

We have considered, although we have not commented upon, all questions presented by the record, and finding no substantial error, the judgment of the Superior Court will be affirmed.