Chicago, Milwaukee and St. Paul Railway Co. *et al.*

*v.*

The City of Chicago.

*Opinion filed December 18, 1899.*

1. Railroads—*purchaser of railroad must observe conditions imposed by ordinance granting right to lay tracks.* The conditions imposed by ordinance granting to a railroad company and its successors the right to lay and maintain tracks within city limits are binding upon the purchaser of the railroad on foreclosure, who continues to exercise and enjoy the privileges granted.

2. Contracts—*when agreement changes several liability into a joint one.* An agreement between a city and two railroad companies, operating within the city under similar but separate ordinances, by which the companies agree to pay any judgment which may be recovered against the city for damages to property by reason of the construction of approaches to a viaduct over their tracks in case their liability for damages shall be judicially determined, which liability is denied, converts the disputed liability, which, under the ordinances, would be several, into one which may be determined by a joint action in assumpsit, based on the payment by the city of a judgment recovered against it for such damages.

*C., M. & St. P. Ry. Co.* v. *Chicago*, 83 Ill. App. 233, affirmed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. John Barton Payne, Judge, presiding.

George R. Peck, Charles B. Keeler, and George Willard, for appellants.

Charles M. Walker, and S. A. Lynde, for appellee.

Mr. Justice Carter delivered the opinion of the court:

The city of Chicago obtained a judgment against the appellant railroad companies, jointly, in an action of assumpsit which it brought against them in the superior court to recover the amount it had paid to a property owner to satisfy a judgment for damages to his land, caused by the construction by the city of an approach in Western avenue to a viaduct over Kinzie street, occupied by railroad tracks of the appellants and of the Chicago and Northwestern Railroad Company. By separate ordinances the city had previously granted to the Chicago, Milwaukee and St. Paul Railway Company, mentioned in the argument as the Milwaukee company, and to the Columbus, Chicago and Indiana Central Railway Company, mentioned as the Columbus company, permission and authority to construct, maintain and operate their roads in Kinzie and other streets, upon the condition expressed in each ordinance that the railroad company should construct and maintain viaducts and approaches thereto (not exceeding two in each year) over such crossings of streets over its tracks as should be designated by the board of public works, and that all the cost and expense of the work should be borne by the railroad company. The ordinance containing the grant to the Columbus company provided that where such viaduct could not be built without crossing over the tracks of some other railroad company or companies, it should only be obliged to join with such other company or companies in the work and to pay its fair proportion of the cost, and if such other company or companies should not so join, and its or their proportion should otherwise be provided for, the Columbus company should pay its fair proportion of

the cost of the viaduct. Both ordinances,—that is, the one for the benefit of the Milwaukee company and the one for the benefit of the Columbus company,—contained this further provision: "The permission and authority hereby granted are upon the further express condition that the said" (stating the name of the contracting railway company) "shall and will forever indemnify and save harmless the city of Chicago against and from any and all damages, judgments, decrees, and costs and expenses of the same, which it may suffer or which may be recovered or obtained against said city for or by reason of the granting of such privileges and authority, or for or by reason of, or growing out of, or resulting from the passage of this ordinance, or any matter or thing connected therewith, or with the exercise by said company of the privileges hereby granted."

The contracting companies accepted these ordinances, and built and operated their respective roads on Kinzie street where it crossed Western avenue. By foreclosure proceedings and *mesne* conveyance the appellant the Chicago, St. Louis and Pittsburg Railroad Company, mentioned in the argument as the Pittsburg company, became the successor of the Columbus company, and the owner of its property and the franchises granted by the ordinance above mentioned, and took possession of and operated the road under said ordinance and its charter.

In December, 1887, the board of public works of the city of Chicago gave notice, in writing, to both said Milwaukee and Pittsburg companies to construct over their tracks at the intersection of Kinzie street and Western avenue a viaduct and approaches thereto in accordance with plans provided by the city, and to begin the work on January 1, 1888. On the 18th of May following, the appellant companies and the city,—that is, the Pittsburg company, as successor to the Columbus company, as party of the first part, the Milwaukee company as the second party, and the city of Chicago as the third party,

—entered into a written agreement, which recited the two ordinances, and stated that the tracks of the Pittsburg and Milwaukee companies were laid across Western avenue at its intersection with Kinzie street, and that said companies were bound to pay their share of the expense and cost of the viaduct, and agreed that said viaduct should be constructed in accordance with the plans which had been prepared; that the contract to construct the viaduct and approaches should be let by the city to the lowest responsible bidder; that the work should be done under the supervision of its commissioner of public works, and that the parties of the first and second parts should pay the entire cost of the south and north abutments and approaches, and of so much of the viaduct from the south and north abutments and approaches as should be constructed over the tracks and right of way of each of the first and second parties; and the city agreed that the part of the viaduct over the tracks and right of way of the Chicago and Northwestern Railway Company should be constructed without expense to either the first or second party. The last paragraph of the agreement was as follows: "And inasmuch as the parties of the first and second part deny that under the ordinances hereinbefore referred to they are liable to pay any land damages that may be recovered by reason of the erection and completion or construction of said viaduct, or any of the approaches leading thereto, at the street above named, it is agreed that the question whether the parties of the first and second part are liable to pay any land damages that may result in consequence of the construction of any viaduct, or of any of the approaches, at the street above named, shall be determined by judicial proceedings, if the city of Chicago shall so elect; and if, upon final judgment, it shall be determined that under the ordinances aforesaid, or otherwise, the said parties of the first and second part are liable for the land damages aforesaid, then the parties of the first and second

part agree that they will pay to the city of Chicago whatever sum the city of Chicago may have paid for land damages, or interest and costs, or any judgment obtained therefor, caused by the construction of said viaduct and the approaches thereto." This contract of May 18 was not set up in the first two counts of the declaration, but in an additional count filed later.

The viaduct and approaches were constructed and paid for as agreed, and no question concerning the same is involved in this suit; but one Rigney, who owned land abutting on Western avenue, recovered a judgment against the city for injury to his property caused by raising the grade of the street above his lot in constructing the approach to the viaduct, which judgment, and the interest and costs, the city paid, and then brought this suit to recover from appellants the amount so paid, with interest. By agreement the case was tried by the court without a jury, and judgment was rendered for the plaintiff upon the issue on the additional count, the plaintiff having suffered a non-suit on the first two counts.

It is plain that the liability sought to be enforced did not have its inception in the contract of May 18, set up in the additional count, but arose from the provisions of the said ordinances of the city, and their acceptance and acts thereunder, by the railroad companies, and principally from the section first above quoted, which was the same in both ordinances. Since the making of the contract of May 18, 1888, we have had occasion to pass upon a similar provision of an ordinance in *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 134 Ill. 323, in which case it was held that the company was liable to the city for the amount it paid to satisfy a judgment recovered against it for damages to property caused by the construction of a viaduct. That question is not now in this case seriously controverted, but the principal contention of appellants is, that the case at bar cannot be maintained, for the reason that they are not jointly liable.

It is conceded on all hands that there was no joint liability of appellants prior to the contract of May 18, 1888, and that appellants must have been sued severally, if at all, on their respective contracts of indemnity created by said respective ordinances, but appellee insists, and it was so ruled below, that this several liability was, by the contract of May 18, converted into a joint liability of the two appellant companies. The question involves the construction of that contract.

Appellants contend that as the contract of May 18 did not create any liability for land damages, but expressly denied it, its only purpose was, and its meaning is, to bind appellants, jointly, to pay all such damages when and after the question of their liability for land damages had been settled by final judgment in separate suits by the city against each of them; that after the question of liability had been so finally determined in separate suits a joint action could be brought against appellants under said contract of May 18, and not otherwise. This contention is not without force, but we are of the opinion, after considering the contract in all of its parts, that its purpose and meaning was and is to convert the disputed liability which, if it existed at all, was several, into one which, if it exists, is now a joint liability. The appellants, while denying all liability, contracted to give to the city the right to elect to bring suit against them to determine whether or not any such liability existed against them under the ordinances in question, and if, upon final judgment, it should be determined they were liable for land damages they would pay all such damages. If such was not the intention of the parties, what important purpose did the provision in question of the contract subserve? A several liability under the ordinances, although disputed, already existed. The contract did not remove the dispute but recited its existence; and there would seem to have been little or nothing to be gained by either party to make a contract giving the city the right to test

the question of liability by several suits when it already had that right, but to give the city the right to test the question of liability under the ordinance by a joint suit would doubtless be of advantage to all parties in the avoidance of costs, expenses, delays and annoyances of unnecessary litigation.   It cannot be said, we think, that the purpose of the contract to be implied from its terms was simply to create a joint liability to pay after the several liability had been determined in separate suits. Each of the parties was already liable for the same land damages under the separate contracts.   There is nothing in the contract of May 18 which implies that the supposed liability should first be tested by separate suits, but the language implies that such liability, although denied, might, at the option of the city, be determined by judicial proceedings brought against them,—that is, against both of them; and if established by final judgment they would pay to the city, or reimburse it for, the amount of such damage paid by it.   It is to be observed that all of the promissory provisions of the contract to be performed by the companies are by its terms to be performed by them jointly, and while the contract does not in express terms provide that their liability for land damages may be determined in a joint action, and is not as clear upon this question as it might have been made, still, we think it is a fair implication from the language used that such was the intention of the parties.

The appellant the Pittsburg company, in a separate argument, contends that it is not liable, under the contract created by the ordinance granting the rights and privileges to the Columbus company, to lay and operate its tracks and road in said streets of the city; that it is a mere purchaser of the road and property of the Columbus company and is not bound by the latter's individual contracts.   We cannot concur in this view.   The right to construct and operate its road was granted to the Columbus company and its successors on the express condi-

tion that the Columbus company would do and perform the things required of it by the ordinance.    The Pitts-. burg company succeeded to all the rights and privileges granted by the ordinance, has exercised and continues to exercise such rights and privileges, and it must perform the conditions annexed to the grant and upon which the exercise of such grant depends.    The right to occupy and use this public street was granted on certain conditions imposed for the public safety and convenience, and appellant cannot exercise the right without liability to assume the burden.    Besides, appellant has estopped itself from insisting on this defense.    The contract of May 18, 1888, executed by the Pittsburg company, states that said company is the successor of the Columbus company, and is in the possession of and operating the tracks constructed by the Columbus company on Kinzie street across Western avenue, and claims to be the owner of and successor to all rights and privileges granted by said ordinance to said Columbus company, and further states that it has acted and is now acting under said ordinance, and *became and was and is bound to comply with and perform all conditions thereof.*    The liability sought to be enforced in this suit is one of such conditions, notwithstanding the general denial of liability thereunder in the contract, and the Pittsburg company cannot now be heard to question its assumption of said condition, although it may deny that the liability sought to be enforced arises out of said condition.    In other words, the company cannot deny that the condition is binding upon it, but it may insist that, properly construed, the condition does not create the liability contended for by the city.    But under the construction we have given to the ordinances the liability is created, and by virtue of the contract of May 18 the two appellants are liable jointly.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*