THE CITY OF CHICAGO, Appellee, *vs.* THE PITTSBURG, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellant.

*Opinion filed February 16, 1910—Rehearing denied April 7, 1910.*

1. MUNICIPAL CORPORATIONS—*when power to legislate must be reasonably exercised.* Where power to legislate on a given subject is conferred upon a municipal corporation and the details of the legislation are not prescribed by the legislature it is implied that the power will be reasonably exercised.

2. SAME—*track elevation ordinance must be reasonable.* Assuming that the elevation of railroad tracks comes within the general police power with which cities are invested, such power is given in general .terms, and an ordinance passed for that purpose must be reasonable or it will be held to be invalid.

3. SAME—*city's power to compel track elevation is not arbitrary.* While a city cannot agree with a railroad company not to exercise its police power when required for the safety and welfare of the public, yet' it cannot, by ordinance passed under its general authority, compel a railroad company to remove viaducts over its tracks in public streets and elevate its tracks unless there is some proper and natural connection between such change and the public safety, welfare and convenience.

4. SAME—*what provision of ordinance has no reference to elevation of tracks.* A provision in an ordinance granting a railroad company the right to lay tracks, to the effect that the company should be subject to general ordinances concerning railroads, has no relation to the subject of elevation of the tracks.

5. SAME—*railroad is not bound to elevate tracks except under conditions of ordinance.* Even though a railroad company may be bound to elevate its tracks when an ordinance requiring such elevation is passed, yet it is not bound to do so until such ordinance is passed, and then only under the conditions of the ordinance.

6. SAME—*when agreement in track elevation ordinance is not without consideration.*  An agreement by a city, in a track elevation ordinance, to release the railroad company from all damages or claims for damages growing out of the company's erection of viaducts previously constructed by direction of the city is not without consideration, where the track elevation ordinance required the railroad company to do many things at great expense which it could not have been compelled to do against its will.

7. SAME—*when city may agree to release damages as consideration for track elevation.*  Where a railroad company has erected viaducts over its tracks in public streets, as required by the ordinance giving it the right to lay tracks, it is within the power of the city to agree to release the company from all damages or claims for damages growing out of the construction of such viaducts if the company will accept the provisions of a track elevation ordinance requiring it to remove the viaducts, elevate the tracks, procure and dedicate the land for streets and alleys and do other things it could not be compelled to do.

8. SAME—*when release of damages by city is not a donation.*  Separate section 2 of the constitution prohibits any donation by a municipal corporation to a railroad company, but it does not disable a city from having any dealing with railroad companies, and does not preclude the city from releasing valid claims against a railroad company in consideration of the doing of things which the company could not be compelled to do and which the city deems of equal or greater value to it than the enforcement of such claims.

9. SAME—*city council may settle doubtful or disputed claims.*  A city council has no power to squander or give away the funds or property of the corporation but it may settle doubtful or disputed claims, and any settlement and compromise of a doubtful claim, made in good faith, binds the city.

10. SAME—*city may be estopped to question validity of its exercise of power.*  If a city may lawfully exercise a power, it may be equitably estopped, as right and justice may require, to question the validity of the exercise of such power on account of the manner in which it was done or the lack of required formalities.

11. SAME—*when a city is estopped to repudiate obligations of track elevation ordinance.*  Where a track elevation ordinance requiring a railroad company to do many things it could not be compelled to do has been accepted by the company and fully performed by it at great expense, the city is equitably estopped to repudiate the obligations imposed upon it by the ordinance upon the ground that the ordinance was not published as required by statute, but only in book form.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

LOESCH, SCOFIELD & LOESCH, for appellant.

EDWARD J. BRUNDAGE, Corporation Counsel, CHARLES M. HAFT, OSCAR H. OLSEN, and JAMES F. BURNS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Cook county entered a judgment in this case in favor of the city of Chicago, the appellee, against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, the appellant, for $4700 and costs, and the trial judge certified that the suit involved the validity of an ordinance of the city of Chicago, and in his opinion the public interest was such that the appeal from the judgment should go directly to this court.

The judgment was for moneys paid by the plaintiff to property owners as damages to their lots ·on account of the construction of viaducts over the tracks of the defendant at Western and Ashland avenues, and the facts are as follows: On April 1, 1872, the city of Chicago, by ordinance, granted to the Columbus, Chicago and Indiana Central Railway Company and its successors the right to lay railroad tracks in certain streets on condition that the railway company should erect and maintain viaducts over its tracks at Halsted, Sangamon, Lake and Madison streets within one year, and annually thereafter erect two viaducts over its tracks at such street crossings as the board of public works might, on or before the first day of January, designate, and should indemnify and save harmless the city from all damages, judgments, decrees, costs and expenses which the city might suffer or might be recovered against it by reason of the grant. The railway com-

pany laid its tracks and complied with the terms of the ordinance by erecting the viaducts named in the ordinance and also constructing the viaducts in question over. the tracks at Western and Ashland avenues, as directed by the city. The Chicago, St. Louis and Pittsburgh Railroad Company succeeded the Columbus, Chicago and Indiana Central Railway Company and was in turn succeeded by the defendant. Certain lot owners instituted suits against the city for damages to their lots occasioned by the viaducts at Western and Ashland avenues. The railroad company was not a party to the proceedings and was not notified of their pendency and judgments were recovered against the city. On August 28, 1890, the city brought two suits against the Chicago, St. Louis and Pittsburgh Railroad Company, then using the tracks, for the amounts of judgments aggregating $4700, recovered against the city by such lot owners. Declarations were filed on November 7, 1890, and pleas were filed on March 3, 1891, but nothing further was done with the suits for about nineteen years. On February 11, 1901, the city council passed an ordinance for the elevation of the tracks of the defendant, and the Chicago and Northwestern Railway Company, the Chicago, Milwaukee and St. Paul Railway Company and the Metropolitan West Side Elevated Railroad Company, and the ordinance was approved by the mayor on the same day. It proposed an elevation of the defendant's tracks from the north line of Fulton street northerly and easterly to the west line of Northwestern avenue, thence easterly to a point near Ada street, and provided for the removal of the viaducts at Western and Ashland avenues by the defendant at its own expense. It provided for the vacation of portions of streets on which the elevation was to be constructed, and required the defendant, in lieu thereof, to lay out and dedicate a street thirty-three feet in width from Jackson boulevard to Monroe street, and a street not less than twenty-four feet wide

from the south line of West Harrison street to the north line of Harvard street, and to improve the same with six-foot cement sidewalk, curb-stone, and vitrified brick pavement upon a cement foundation, and to remove the gas pipes, water pipes, lamp-posts, sewer pipes and other underground improvements from the parts of the street vacated. The railway company was to remove a stone wall described in the ordinance so as to leave a public alley seventeen feet in width and improve the same, and waive its rights under the ordinance of April 1, 1872, to maintain its tracks at grade, subject to the terms and conditions of said ordinance. In consideration of the removal of the viaducts and the other things to be done by the railway company and the waiver of its rights under the ordinance of April 1, 1872, the city agreed to release, and thereby did release and discharge, the defendant from all damages and claims for damages which then existed or might thereafter be asserted against it, and from any and all judgments which had been or might thereafter be recovered against it or the city, arising from or growing out of the construction of the viaducts across the tracks of the defendant. The work required of the defendant was to be done at its own expense, under the superintendence and subject to the inspection and approval of the commissioner of public works, and at least ten days before the commencement of any part of the work the plans and specifications were to be submitted to the commissioner for his examination. The ordinance provided that it should be null and void unless accepted by the railroad companies within ninety days, and that it should be in force and effect from and after its passage, approval and publication. The ordinance was accepted, the defendant removed the Western and Ashland avenue viaducts, the commissioner of public works approved the plans and specifications, and the tracks were elevated by the defendant and the streets and alley laid out, dedicated to the public and improved. The defendant

expended $840,000 doing the work required of it by the ordinance. The ordinance was published in the council proceedings of February 11, 1901, in book form but was not otherwise published. In 1909 the two suits brought by the city in 1890 were consolidated and brought to trial by the city. A jury having been waived, there was a trial before the court and the judgment appealed from was rendered.

The agreement created by the ordinance and its acceptance and full performance thereof by the defendant having been proved, it was entitled to judgment if the city was bound by its agreement, and the claim of the city, which was sustained by the trial court, was that it was not so bound, but could repudiate its obligation and recover under the original ordinance of April 1, 1872. It is argued in support of that claim that the agreement and release were without consideration and therefore void, because the defendant was already bound to elevate its tracks by virtue of a provision in the ordinance of 1872 that the privileges granted should be subject to all general ordinances then or thereafter in force concerning railroads in the city, and because the city could compel elevation under its general police powers. It is clear that the provision of the ordinance of 1872 that the defendant should be subject to general ordinances concerning railroads had no relation to the subject of elevation of the tracks. That subject was not within the language used, and the ordinance made specific provision for securing the safety of the public by viaducts over the tracks which were to be laid in the streets. It is equally clear that the defendant had not become bound to elevate its tracks merely because the city had power to compel the elevation if it should see fit to exercise the power. If the defendant had become legally bound to elevate its tracks when an ordinance should be passed requiring elevation, it was not so bound until an ordinance was passed, and when this ordinance was passed it was not

244—15

legally bound to elevate them except in accordance with the terms and conditions of the ordinance. The ordinance also specified things to be done by the defendant which the city could not have compelled under the police power or any other power which it possessed, and the argument that there was no consideration for the agreement is baseless.

Another proposition is based on the doctrine that the city had no authority to contract away or abrogate its police power, but could at any time make such police regulations as might be necessary for the safety of the persons and property of the public. It is therefore contended that the city could at any time have required the defendant to remove the viaducts and elevate its tracks without any condition, leaving it still liable for the damages occasioned by the viaducts, and that the agreement to release such damages was illegal and void. Railroad corporations are subject to police regulations in the interest of the public safety and welfare, and power has been given to cities to do certain specific things in the exercise of that power and a general authority to pass and enforce all necessary police ordinances, and to pass all ordinances, rules, and make all regulations proper or necessary to carry into effect the powers granted to them. But the legislature cannot, under the guise of police regulations, arbitrarily invade personal rights or private property. There must be some obvious and real connection between the actual provisions of police measures and their assumed purpose. Counsel also lose sight of the rule of law that where power to legislate on a given subject is conferred on a municipal corporation and the details of the legislation are not prescribed by the legislature, it is implied that the power will be reasonably exercised. Assuming that the elevation of railroad tracks comes within the general police power with which cities are invested, the power is given in general terms, and an ordinance passed for that purpose must be reasonable or it will be pronounced invalid. (*City of Lake*

*View* v. *Tate,* 130 Ill. 247; *Hawes* v. *City of Chicago,* 158 id. 653; *Wice* v. *Chicago and Northwestern Railway Co.* 193 id. 351; *Chicago and Alton Railroad Co.* v. *City of Carlinville,* 200 id. 314.) It was on that principle that the court held in *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville,* 67 Ill. 37, that an ordinance requiring a railroad company to keep a flagman by day and a red lantern by night at a railroad crossing where it was not required for public safety was unreasonable and void. The city of Chicago could not agree not to exercise the police power when required for the safety and welfare of the public, but, on the other hand, it could not pass an ordinance, under its general authority, requiring the removal of viaducts and the elevation of tracks where there was no proper or natural connection between such a change of the tracks and the public safety, welfare or convenience. The objects of viaducts and elevated tracks are the same,— *i. e.,* to eliminate grade crossings and the danger, delays and inconvenience connected with them,—and there is nothing tending to show that elevated tracks would be any safer for the public than viaducts. The viaducts had been built in pursuance of the ordinance of 1872 at great expense and other viaducts were provided for by that ordinance. If they secured the public safety, an ordinance requiring the defendant to tear them down and elevate its tracks against its will would necessarily be held unreasonable and void on the same ground as the decision in *Hawes* v. *City of Chicago, supra.* It was there held to be unreasonable, unjust and oppressive to compel an owner to construct and pay for a wood sidewalk, and, when it was in substantially as good condition as when first built and in all respects safe, convenient and sufficient for public use and travel, to take it up, throw it away and put down a different sidewalk at his own expense. The city having provided for the public safety, according to the judgment of the city authorities when the original ordinance was

passed, by the viaducts specified therein and the requirement for the construction of others as called for, an ordinance requiring them to be torn down without any change in conditions would not have been a legitimate exercise of the police power, and it does not appear that any new contingency had arisen requiring or authorizing any such action. This whole argument, however, does not apply to this ordinance, which was not merely an attempt to exercise the police powers by the compulsory elevation of the railroad tracks, but which included agreements on the part of the defendant to procure and dedicate land for streets, to improve the same, to remove a stone wall and to provide a public alley and improve that. None of these things could have been compelled by ordinance against the will of the defendant, and if the city could secure these things by ordinance it could also release the damages as a consideration. There was no attempt by the ordinance to compromise, barter or exchange the police power for anything else and no undertaking to limit or exercise the right.

It is also urged that the city could only exercise the police power by an ordinance compelling the elevation of the tracks, and that the exercise of the power by an ordinance in the nature of an agreement would enable the city to suspend the power as to one person or corporation and enforce it against other persons and corporations. We had before us an ordinance for the elevation of railroad tracks in the case of *City of Chicago* v. *Jackson,* 196 Ill. 496, which contained mutual agreements and conditions on the part of the city and the railway company, and we regarded that ordinance as providing for the improvement by agreement rather than by the order or command of the city. The police power must be employed impartially as against all persons and corporations in the same situation, but it is plain that conditions may be quite unlike as between different railroads in different parts of the same city, and it may be not only desirable, but entirely legitimate, to se-

cure new streets and alleys or other conveniences for the city upon condition, as was done in this case. There is no valid objection to promoting the public advantage and convenience by such conditions as are contained in this ordinance, and, as already pointed out, the ordinance was not a mere exercise of the police power.

The fact that the liability of the defendant to pay the damages released had been established is considered of importance by counsel for the city. A contract like the one in the ordinance of 1872 was sustained in *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 134 Ill. 323, and the liability was recognized in *Chicago, Milwaukee and St. Paul Railway Co.* v. *City of Chicago,* 183 id. 341. But those decisions only show that there was something to be released. If the defendant had remained in the enjoyment of the rights conferred by the ordinance of 1872 and the damages had not been released it might have been compelled to pay them, and it is not contended that it would not have been liable for them. The fact that there was a valid claim released is not sufficient to impeach the release. A statement of the amount of claims for damages and the cost of the things which the city agreed to do in the ordinance is given by counsel for the purpose of showing that the city did not get as much value, aside from the cost of elevating the tracks, as what it surrendered. Whether that is true or not is of no importance on the question of the validity of the agreement.

It is argued at much length that the ordinance was void for the reason that it was in conflict with various provisions of the constitution and statutes and a general ordinance of the city. The provisions of the constitution which counsel say were violated are separate section 2, which provides that no county, city, town, township or municipality shall ever become subscriber to the capital stock of any railroad or private corporation or make donation to or loan its credit in aid of such corporation; section 12 of

article 9, which prohibits any municipal corporation from becoming indebted, in the aggregate, exceeding five per cent of the value of the taxable property therein; and section 23 of article 4, which provides that the General Assembly shall have no power to release or extinguish, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to the State or any municipal corporation therein.

Separate section 2 does not disable a city. from having any dealings with railroad corporations. It was adopted to put a stop to donations and subscriptions to capital stock in aid of projected railroads under special charters giving municipalities power to do so. The section prevented such donations and subscriptions under authority of the legislature and was a restraint upon the legislative power to authorize them, but, aside from such acts, a municipality was never authorized to give away its money or property. Authorities of municipal corporations have no power to make donations to any individual or corporation, but the revenues are to be held for corporate purposes. (*Washingtonian Home* v. *City of Chicago,* 157 Ill. 414.) The release in this case was not a donation but was an exchange of one thing for another. It was the giving up of the liability in consideration of benefits received. In *Town of Petersburg* v. *Mappin,* 14 Ill. 193, it was held that although a municipal corporation cannot dispose of its property by way of gratuity, the town had power to settle and adjust claims, and a settlement of an existing controversy by the trustees, in good faith, bound the corporation. Again, in *Agnew* v. *Brall,* 124 Ill. 312, it was said that a city council has no power to squander or give away the funds or property of the corporation, but that it may settle doubtful and disputed claims, and any settlement and compromise of a doubtful claim, made in good faith, binds the city. In this case the city secured the performance by the

defendant of things that it could not have demanded and the release was in no sense a donation.

The connection between section 12 of article 9, limiting indebtedness, and the ordinance in question, is not apparent. The plaintiff proved that the city of Chicago was indebted in excess of five per cent of its taxable property, and the argument seems to be, that if the defendant had not been released and had paid into the treasury the damages on account of the viaducts, the city would have had that much more money and the municipal expenses would have been reduced by that amount. We are unable to see that the provision has anything to do with this matter, or that a compromise by which some of the assets were given up in consideration of benefits received amounted to incurring an indebtedness.

What has been said in respect to making donations answers the argument under section 23 of article 4. It may be conceded that if the General Assembly could not release or extinguish a liability to any municipality it could not authorize the municipality to do the same thing; but that would not prohibit a city council from giving up a liability in consideration for something which was deemed of equal or greater value.

The statutes which counsel say were violated are the provisions of the charter of the city requiring the passage of an annual appropriation bill in the first quarter of each fiscal year and prohibiting expenditures beyond the same. We cannot see that the provision for an appropriation to meet the expenses and liabilities of the city has any relation to the release in question, and neither has the ordinance of the city requiring contracts for any work or other public improvement, where the expense exceeds $500, to be let to the lowest bidder.

The ordinance provided that it should take effect from and after its passage, approval and publication, but should be null and void if the railway companies should not ac-

cept the same within ninety days and undertake to do the things required of them by the ordinance. It was published in a book, from which it was read on the trial, but the book was the proceedings of the city council and the publication was not such as is required by statute. (*Bullis* v. *City of Chicago*, 235 Ill. 472.) There was nothing in the ordinance, so far as the railway companies were concerned, which made publication necessary under the statute, but it contained a section imposing a penalty of five dollars on any individual trespassing on the elevated tracks. It is contended that for want of publication as required by the statute the city could repudiate its part of the agreement, and that a disregard of duty to publish the ordinance could be taken advantage of after full performance on the part of the defendant. As between the city and the railway companies the ordinance was a proposition on the part of the city which the companies were permitted to accept within ninety days, and the ordinance was accepted, the viaducts were torn down and large sums of money were expended by the defendant in compliance with the ordinance. Plans for the work were filed with the commissioner of public works and approved by him, the new streets and alley were acquired, dedicated and improved, and to permit the city to avail itself of all the benefits conferred and repudiate its obligations would be to accomplish a fraud. If an ordinance is not within the powers conferred upon a city, the city authorities can neither make it nor ratify it and the city cannot be estopped from disputing any obligation created by it. But a city is not entirely exempt from all the rules of honesty and fair dealing that are applicable to individuals and private corporations. If a city may lawfully exercise a power, it may be equitably estopped to question the validity of its exercise on account of the manner in which it is done or the lack of required formalities, as right and justice may require. (*Chicago and Northwestern Railway Co.* v. *People*, 91 Ill. 251; *City*

*of Chicago* v. *Carpenter,* 201 id. 402; *People* v. *Blocki,* 203 id. 363; *Village of Winnetka* v. *Chicago and Milwaukee Electric Railway Co.* 204 id. 297; *Village of London Mills* v. *White,* 208 id. 289.) The defendant was bound to know what acts the city could lawfully perform and what it was prohibited by law from performing, but it knew that the city had a right to pass the ordinance and make the contract, and the city assumed that every step had been taken necessary to make a valid contract. The conduct of the city amounted to a representation · that the ordinance was in force, and that representation was necessarily made with knowledge of the facts, and there was no evidence that the defendant had any knowledge of the truth. The action of the city was with the intent that the ordinance should be acted upon, and it was, in fact, acted upon. To permit the city now to say that it neglected publication of the ordinance would be a fraud, which the law ought not to permit. There is no ground for a distinction between this case and that of the village of London Mills, which had power to grant the privilege of using the streets and alleys for telephone purposes by ordinance but granted such permission by resolution. After the resolution had been acted on, it was held, in accordance with *City of Quincy* v. *Chicago, Burlington and Quincy Railroad Co.* 92 Ill. 21, that the village could not be heard to say that an ordinance was necessary. (*Village of London Mills* v. *White, supra.*) Considering the ordinance in the light of a contract it might well be held that publication was waived by the city, but we think it was estopped to say that the ordinance was not in force when acted upon by both parties. The question is not the same as it would have been if the city had been prosecuting an individual for trespassing on the tracks, when the city would have been bound to prove all the steps necessary to fix the liability. The defendant presented a complete defense to the suit, and the

rulings of the court on the propositions of law submitted were erroneous.

The judgment is reversed and the cause remanded to the circuit court.

. *Reversed and remanded.*