## Ludlow Valve Manufacturing Company, Appellee, v. City of Chicago, Appellant.

### Gen. No. 18,244.

1. DAMAGES—*liquidated damages.* That parties fix a sum to be paid in case of a breach of the contract and call it "liquidated damages," is not conclusive, but is one of the circumstances tending to prove actual intent of the parties.

2. DAMAGES—*when stipulation for liquidated damages sustained.* In an action for balance alleged to be due on a contract for furnishing gate valves for use by a city, where the contract recites that time is one of the "essential conditions of this contract," that a failure to deliver the valves within the time fixed "will work an injury to the city," and that the damages thus arising "cannot be calculated with any degree of certainty" a provision for a deduction of $10.00 liquidated damages for every day of delay in delivery after the fixed time, is sustained.

3. DAMAGES—*provision for liquidated damages.* Where from the nature of an agreement it is clear that any attempt to ascertain the actual damage would be difficult if not vain, the courts will incline to give the relief the parties have agreed on; but if the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term "liquidated damages" will not prevent the courts from inquiring into the actual injury sustained, and doing justice between the parties.

4. MUNICIPAL CORPORATIONS—*powers of city council.* In the discharge of their duties, the city council must act within the bounds pre-

scribed by their charter, and if they exceed the powers conferred by the charter such acts are nugatory.

5. MUNICIPAL CORPORATIONS—*power of city council to discharge debt.* The city council has no power to sell, or in any manner dispose of, the property of the corporation without consideration and no right to discharge without payment a debt which may be held against parties who are solvent and responsible, where no controversy exists in regard to the validity and binding effect of the indebtedness.

6. CONTRACTS—*effect of order extending time to complete contract.* Where plaintiff enters into a contract with defendant city to supply several hundred gate valves by a specified time, and after the time has passed the city council enters an order extending the time of performance, such an order does not amount to a waiver of the right to liquidated damages provided by the contract.

Appeal from the Municipal Court of Chicago; the HON. EDWARD A. DICKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded. Opinion filed June 12, 1913. Rehearing denied June 26, 1913.

WILLIAM H. SEXTON, for appellant, S. A. T. WATKINS, of counsel.

ELBERT C. FERGUSON, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellee recovered a judgment against the city of Chicago for $1,000, alleged to be the balance due upon a contract for furnishing several hundred gate valves for use in connection with the city's water supply system. The contract is dated August 21, 1906, and provides that gate valves of the number and sizes described in the specifications attached to the contract are to be furnished by appellee and delivered at the places named in the specifications, that such delivery shall "be commenced as provided in paragraph 21 of attached specifications, to progress * * * as provided in the specifications * * * and to be finished and fully completed as provided in paragraph 21 of attached specifications, the time of commence-

ment, rate of progress and time of completion being essential conditions of this contract.'' Paragraph 21 thus referred to provides that ''the work shall be commenced immediately upon the acceptance of the bond filed with the contract, and the delivery of valves shall commence not later than thirty days from the date of said acceptance. * * * One-third of the whole number of valves shall be delivered within sixty days from the date of above acceptance, one-third in ninety days from said date, and the remaining one-third within four months from said date.'' Paragraph 22 of the specifications is as follows: ''It is distinctly understood and agreed by the parties hereto that the valves hereinabove mentioned shall be delivered within the times severally fixed for their delivery. Inasmuch as the failure to deliver said valves within the time herein fixed will work an injury to the city, and as the damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if said valves are not fully delivered within the times fixed hereby, then there shall be deducted from the contract price and retained by said city as its ascertained and liquidated damages, the sum of $10 for each and every day passing after the date so fixed for such delivery until said valves are delivered.'' It was admitted upon the trial that all the valves specified in the contract were delivered to and received by the city in accordance with the contract, except as to the time of delivery. It appears also, from the evidence, that the bond required by the contract to be filed was approved by the Commissioner of Public Works on August 28, 1906. While there is some evidence tending to show that the contract was not signed by the city comptroller until September 18, 1906, we think the evidence to that effect is insufficient to overcome the express provision of the contract fixing the date of ''the acceptance of the bond'' as the date from which to compute the time of delivery. Under that

provision the first one-third of the whole number of valves was required to be delivered before October 28, 1906; the second one-third before November 28, 1906, and the remainder to be delivered before December 28, 1906. The evidence apparently shows that the first one-third of the valves were not fully delivered until November 25, 1906; the second one-third, until January 12, 1907, and the remainder, until January 24, 1907. Upon this basis, the total delay amounted to one hundred days time. On February 19, 1907, a final voucher and warrant were issued to appellee, showing that the total amount of the contract was $23,636.65, from which $10 a day was deducted as liquidated damages for the hundred days delay above mentioned, and the remainder was paid to appellee. On March 25, 1907, the Commissioner of Public Works wrote a letter to the finance committee of the city council, referring to appellee's contract and stating: "I beg to submit the attached report of Engineer Shaw, in which he states that the City of Chicago received the valves as fast as needed and occasioned no damages. Under the circumstances, I respectfully recommend that the contract be extended to January 15, 1907, and that no deductions be made for forfeiture by reason of making such extensions." Acting upon this letter, the finance committee made a report, and on its recommendation, the city council passed an order, on May 6, 1907, and to correct a clerical error in that order, passed a second order on May 13, 1907, authorizing the Commissioner of Public Works to "extend the time" for completing the contract to January 15, 1907, which that officer, by letter dated May 25, 1907, attempted to do. A further order was passed on November 24, 1907, purporting to "extend the time" for the final completion of the contract to January 28, 1907. It will be noticed that all of these orders were passed after the valves had all been delivered, after the deduction of $1,000 had been made, as above stated,

and after a warrant had been issued and paid to appellee for the balance due by the terms of the contract. Appellee wrote into its receipt for the amount of the final voucher the words: "Without prejudice to our claim for the amount of penalty deducted." No further payment was made, however, in pursuance of the council orders, and in December, 1910, appellee brought suit to recover the $1,000 deducted from the contract price of the valves.

Two questions are presented for our consideration: First, whether the provision authorizing the city to deduct $10 a day for delays in furnishing the material is to be construed as a provision for liquidated damages or merely as a penalty; second, whether the city council had the power, after all the materials had been delivered to the city, to waive the benefit of that provision, or (what amounts to the same thing) to "extend the time for performance" after the materials had all been delivered and nothing remained to be done but the payment of the price agreed upon.

It is often a difficult matter to determine whether a contract provision like the one here involved shall be construed as a provision for liquidated damages or only as a penalty. The primary and most essential principle of construction is to ascertain the meaning and intent of the parties, by reference to the contract itself, the subject-matter thereof, the terms used to express the intent, and the circumstances under which the contract was made. The fact that parties fix a sum to be paid in case of a breach of the contract and call that sum "liquidated damages" is not conclusive, but is one of the circumstances tending to prove the actual intent of the parties. *Hennessy v. Metzger,* 152 Ill. 505; *Gobble v. Linder,* 76 Ill. 157. In the latter case it is said: "It will be inferred the parties intended the sum named as liquidated damages where the damages arising from the breach are uncertain, and are not capable of being ascertained by any satis-

factory and known rule, or where, from the nature of the case and the tenor of the agreement, it is apparent the damages have already been the subject of actual and fair calculation and adjustment." In 1 Sedgwick on Damages (8th Ed.) sec. 396, it is said: "The subject-matter of the contract, and the intention of the parties are the controlling guides. If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, then the courts will incline to give the relief which the parties have agreed on. But if, on the other hand the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term 'liquidated damages' will not prevent the courts from inquiring into the actual injury sustained, and doing justice between the parties."

In this case the contract expressly recites that time is one of the "essential conditions of this contract," that a failure to deliver the valves within the time fixed "will work an injury to the city," and that the damages thus arising "cannot be calculated with any degree of certainty." These recitals appear over the signature of appellee, as well as of appellant. In the nature of things, the amount of damage from the nondelivery of gate valves at the time specified in the contract would be extremely difficult, if not impossible, to ascertain with any degree of accuracy. In some cases, the damage resulting from the nondelivery of such valves at the time they are needed might be very great, and, in principle, it can make no difference whether any such damage does, or does not, result in a particular case. The damages are fixed in advance, by agreement, in view of the possibility of damage resulting from a failure to deliver within the time stipulated. Where, as in this case, it appears that the parties themselves have agreed upon an amount which shall be the measure of damages, that amount, if not unreasonable or unconscionable, will be adopted by the

394 Appellate Courts of Illinois.

Ludlow Valve Mfg. Co. v. City of Chicago, 181 Ill. App. 388.

courts as the ascertained amount of damage. *Poppers v. Meagher,* 148 Ill. 192. There is no proof that the amount fixed by the contract is in any sense unreasonable or oppressive and no good reason is perceived, under such circumstances, why the contract which the parties themselves have made should not be enforced as written.

As to the second question involved, "it is a plain proposition of law, and one well understood, that in the discharge of their duties a city council must act within the bounds prescribed by their charter, and if they exceed the powers conferred by the charter, such acts are nugatory. They have no power to squander or give away the funds or property of the incorporation, but all property within their control, belonging to the incorporation, must be honestly applied to the uses and purposes specified in the act of incorporation. The city council have no power to sell, or in any manner dispose of, the property of the corporation without consideration, and, in our opinion, they have no right to discharge a debt without payment, which may be held against parties who are solvent and responsible, where no controversy exists in regard to the validity and binding effect of the indebtedness." *Agnew v. Brall,* 124 Ill. 312. See also to the same effect, *Town of Petersburg v. Mappin,* 14 Ill. 193, and *City of Chicago v. Pittsburg, C., C. & St. L. Ry. Co.,* 244 Ill. 220.

The record shows that the form of proposal and the specifications furnished to bidders who bid for the contract in question contain the clause regarding liquidated damages for delay in delivering the materials. It must be assumed that the price bid for furnishing and delivering the valves was bid by appellee with this provision in mind. It cannot be said that this provision did not form a material part of the consideration for the contract. Presumptively, at least, the price bid would have been less but for this clause

in the contract. The price having been thus fixed upon the basis of a delivery within the time specified in the contract, it follows that when appellee failed to comply with that condition the city did not receive, and appellee did not furnish, that part of the consideration for the contract. Hence, appellee was not thereafter entitled to receive that part of the agreed price which it had itself agreed should be deducted therefrom in case of its failure to comply with that part of its contract. The right to make the stipulated deduction had accrued to the city at the time the council orders were passed. This was a property right, which then had a value of $1,000 to the city. The city council had no power to give away this property, or otherwise dispose of it without consideration. To hold that the "orders" passed by the city council after the right of the city to make the specified deduction from the contract price had become fixed amounted to a waiver or relinquishment of that right, would be to give judicial sanction to the making of a pure gift of the sum of $1,000 to appellee out of the public treasury.

The principle that the city council has the right to compromise or settle a doubtful claim against the city can have no application to the facts shown by the record before us. In a legal sense, there was no doubtful claim to be settled or compromised. While it is true that appellee wrote into its receipt for the amount of the final voucher the words "without prejudice to our claim for the amount of the penalty deducted," we have already held that the provision in question is not a penalty, and no evidence was introduced tending to show that appellee had any just claim, legal or equitable, to the amount deducted. Moreover, the council "orders" do not purport to settle or authorize a settlement of any *disputed* claim. They purport upon their face to "extend the time of performance" to a date long prior to the passage

of such "orders." The very language of these orders implies an admission on appellee's part that the contract provisions as to time of performance had not been complied with by it, and the evident purpose of the orders was to give appellee some ground to claim that an undisputed and vested right of the city had been waived, released or relinquished. There was no consideration whatever for such attempted release, and the orders were, in our opinion, wholly nugatory.

For the reasons indicated, the judgment of the Municipal Court will be reversed and the cause remanded.

*Reversed and remanded.*