(No. 16353.—Decree affirmed.)

ADA SEELY, Appellee, *vs*. THE BOARD OF EDUCATION OF GREEN VALLEY COMMUNITY HIGH SCHOOL DISTRICT No. 306, Appellant.

*Opinion filed December 16, 1924—Rehearing denied Feb. 5, 1925.*

1. PRACTICE—*when new counsel are not entitled to re-open case after master's report is presented.* New counsel employed after reference of the case to the master are not entitled to have the case re-opened for further evidence on a new issue after the master's report is presented and objections thereto are overruled, where said counsel filed a cross-bill and issues under it were referred to the master six months before the master's report was presented, and where their client was informed of the facts they desired to put in evidence before conclusion of the testimony before the master.

2. SCHOOLS—*when school site may be selected by board of education—specific performance.* Where the voters by a majority of the votes cast authorize the purchase of a school house site by the board of education but fail to select the site by a majority of the votes the statute gives the board the power to select the site, and its act in contracting for the purchase of a site constitutes a selection, although the minutes of the board erroneously recite that the site was selected at the election; and the owner of the property, seeking specific performance of the contract of purchase, is entitled to relief under a general prayer although her bill alleges that the site was selected by the voters at the election.

3. SAME—*members of school board may sign petition for election.* Members of a board of education are legal voters in a school district, and the fact that they are members of the board does not disqualify them from signing a petition for an election to authorize the purchase of a school house site, to select the site and issue bonds therefor.

4. MUNICIPAL CORPORATIONS—*when municipality is estopped to question validity of its act.* Where a municipality exercises a lawful power it may be estopped to question the validity of the act on account of the manner in which it was performed.

5. SPECIFIC PERFORMANCE—*when objection to title cannot be set up as a defense.* An objection that the abstract does not show merchantable title cannot be relied upon as a defense to specific performance where such objection was not given as a reason for not performing the contract until after the bill was filed.

6. PLEADING—*general prayer is sufficient to support decree warranted by bill and evidence.* A general prayer for relief is sufficient to support any decree warranted by the allegations of the bill and the evidence.

APPEAL from the Circuit Court of Tazewell county; the Hon. T. N. GREEN, Judge, presiding.

W. J. REARDON, (CELIA M. WEAVER, of counsel,) for appellant.

CLARENCE W. HEYL, and WILLIAM A. POTTS, (HEYL & HEYL, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Ada Seely, complainant, filed her bill in the circuit court of Tazewell county on July 25, 1922, against the board of education of Green Valley Community High School District No. 306 for the specific performance of a contract made on August 22, 1921, between the parties for the sale and purchase of real estate. The bill alleged defendant was the duly elected board of a legally organized community high school district; that prior to August 22 the board called an election for the purpose of selecting a site for a school building; that at said election the property described in the contract was selected as a school site and the board authorized to purchase said real estate for school purposes and a bond issue was authorized to raise money to build on said site; that after the selection of the property as a school house site, complainant and the board of education on August 22, 1921, entered into a written contract by which the owner agreed to sell and the board agreed to buy the property for $6000; that complainant agreed to convey the premises by warranty deed delivered to the secretary of the board on or before January 1, 1922, and to furnish on or before October 1, 1921, by delivering to the board's secretary, an abstract of title to date, showing merchantable title in complainant, free from any and

all incumbrances; that the board was given a reasonable opportunity to have the abstract examined; that the taxes for 1921 were to be paid by the board and possession delivered to it on or before January 1, 1922, all rents and profits due before delivery of the deed to belong to complainant; that the board agreed to pay $1000 cash at date of contract and $5000 on or before March 1, 1922, with interest at six per cent from the date of the contract. The bill alleged complainant on or before October 1, 1921, delivered to the secretary of defendant a complete abstract of title brought down to date, showing merchantable title, free and clear of all incumbrances; that the abstract was submitted by defendant to its attorney for examination, and the title as shown by the abstract was found by the attorney of defendant to be merchantable in complainant and free of all incumbrances; that defendant has retained the abstract of title and still has it in its possession. The bill further alleged complainant executed a warranty deed conveying the premises to defendant, and on the 24th of December, 1921, mailed the deed to the secretary of defendant; that defendant received the deed and submitted it to its attorney for examination and approval; that the attorney for defendant approved it, and on January 1, 1922, complainant affixed $6 in revenue stamps to the deed, then in possession of defendant; that defendant accepted the deed and has remained in possession of it and is now in possession of it. The bill alleged complainant was in possession of the premises prior to January 1, 1922, and defendant has since been in possession thereof, and complainant has collected no rents therefrom. The bill alleges complainant has in all respects complied with the contract; that defendant accepted the abstract and deed and went into possession of the property and has retained the possession; that complainant has requested defendant to pay the balance of the purchase price but it has neglected and refused to do so.

The bill was demurred to but no action was taken on the demurrer, and on December 19, 1922, the demurrer was withdrawn and on December 22 defendant answered. The answer denied complainant was the owner of the fee in the premises August 22, 1921; denied defendant was a legally organized board of education for a community high school district; denied that prior to August 22, 1921, it called an election to select a site for the community high school district for a school building; denied that the land described in the contract was selected as a school house site; denied defendant was authorized to purchase the real estate for school purposes; denied a bond issue was legally authorized; denied defendant offered to purchase the property from complainant; denied that it entered into a legal contract August 22, 1921, with complainant or a contract of any kind; denied defendant agreed to pay complainant $6000 for the property or to pay the taxes thereon for the year 1921. The answer admits defendant paid complainant $1000 to apply on the alleged purchase price of the real estate and avers the contract was executed without lawful authority by defendant; that $1000 was unlawfully paid complainant and she is indebted to defendant in the sum so unlawfully paid to her. The answer denied that October 1 and September 26, 1921, complainant delivered to the secretary of defendant a complete abstract of title certified by a competent abstracter; denied the abstract showed a merchantable title to the premises; denied it was submitted to any attorney for examination; denied that the title to the real estate is a merchantable title; denied defendant has an abstract of title in its possession and states that it is unable to obtain an abstract for examination; denied complainant on December 24, 1921, mailed a deed to defendant's secretary; denied defendant received the deed and submitted it to its attorney for examination; denied any attorney for defendant found the deed to be a good and sufficient warranty deed; denied

that any authorized attorney approved said deed or that defendant accepted it; denied that the deed has ever been in the possession of defendant or is now in its possession; denied complainant delivered possession of the premises to defendant, and denied defendant has been in possession thereof; denied complainant had complied with the provisions of the contract; admits complainant has requested defendant to pay money she alleges defendant owes her, and avers complainant owes the defendant $1000 unlawfully collected by her from defendant.

A replication was filed to the answer, and December 22, 1922, the cause was referred to the master in chancery. April 14, 1923, defendant filed a cross-bill, alleging defendant paid complainant $1000 to apply on the alleged purchase of real estate; that the contract for the purchase was entered into without lawful authority and the payment of the $1000 was unlawfully made; avers complainant is indebted to defendant thereby in the sum of $1000, which she withholds and refuses to pay. The cross-bill prays for a decree requiring complainant in the original bill to pay defendant $1000.

After the cross-bill was answered an order of reference to the master of the issues made thereby was made and entered April 21, 1923. The master heard the proof, and upon consideration thereof found, after overruling objections, and reported to the chancellor, that complainant was entitled to the relief prayed in her bill and recommended that a decree be entered accordingly. The chancellor overruled exceptions of defendant and entered a decree as prayed in her bill and recommended by the master. From that decree defendant has prosecuted this appeal.

Before the master filed his report defendant moved that he re-open the case to hear additional testimony, which defendant claimed did not come to its knowledge until after the proofs were closed. What the defendant asked to prove by this evidence was, that less than one-fifth of the

legal voters of the school district signed the petition for the election to vote on the purchase of a school house site and other propositions. The master's report was filed November 5, 1923, and counsel for defendant thereupon moved the court to re-refer the cause to the master for the purpose of permitting it to introduce testimony that the petition for the election was not signed by one-fifth of the legal voters of the district. These motions were denied by the master and by the chancellor.

The legality of the organization of the school district and of the election of the board of education is not involved in this litigation.

On March 30, 1921, a petition was presented to appellant containing 154 signatures, asking that an election be called at an early date for the purpose of voting on four propositions:

(1) To locate a school house site in and for Green Valley Community High School District No. 306, Tazewell county, Illinois.

(2) "For" or "Against" the proposition to authorize the board of education to purchase a school site for Community High School District No. 306, Tazewell county, Illinois.

(3) "For" or "Against" the proposition to authorize the board of education to erect a community high school building for Community High School District No. 306, Tazewell county, Illinois.

(4) "For" or "Against" the proposition to authorize the board of education to issue the bonds of said Community High School District No. 306, Tazewell county, Illinois.

The election was called and held April 9, 1921, and 324 votes were cast at the election. Two sites were voted for. Site 1 was described as lots K and L and the north 132 feet of lot M. Site 2 was lot K alone, which is the property in controversy in this case. The site designated as lots K and L and part of lot M received 125 votes.

Site 2, designated as lot K, received 37 votes. One hundred and seventy-five votes were cast in favor of authorizing the board of education to purchase a school house site and 124 votes against it; 169 votes were cast to authorize the board of education to erect a high school building and 123. against it; 168 votes were cast in favor of a bond issue of $80,000 and 128 votes against it. The judges and clerks of the election reported the results to the board, and stated in their report that the site designated as lots K and L and the north 132 feet of lot M "was selected as a school house site for said district;" that the proposition to authorize the board to purchase a school house site was carried by a majority of 51; that the proposition to authorize the board to erect a high school building carried by a majority of 46; that the proposition to issue bonds in the amount of $80,000 was carried by a majority of 40. The minutes of the board showed it was moved and seconded that the report of the judges and clerks of the election be approved and spread upon the minutes; that the board, upon a canvass of the returns of the election, "hereby declare that the site designated as lots K and L and the north 132 feet off of lot M * * * has been selected by the voters of said district at said election." The board also found that the other propositions voted upon were carried, and that E. G. Burns and Frank Hofreiter were at the same time elected as members of the board of education for the high school district. Five members of the board voted for the motion and none voted against it. Hofreiter succeeded Darling as a member of the board, and it was then composed of Coriell, Keefer, Copes, Burns and Hofreiter. Coriell was elected president and Keefer secretary. Ben L. Smith was the attorney for the board. August 19, 1921, at a meeting of the board the purchase of lot K from appellee was discussed but no action taken, and the meeting adjourned to August 22. The minutes showed all members of the board were present, and that

a resolution was adopted reciting that at the election in April, 1921, the voters selected a site for a school house; that lot K was a part of the site. The resolution declared:

"Whereas, pursuant to said election this board was authorized to acquire, by purchase, condemnation or otherwise, the said tract of land for a school site; and whereas, the owner of said property aforesaid, Mrs. Ada Seely, of the city of Peoria, has made a proposition to said board of education to sell land to the district, which proposition has been reduced to writing and signed by the owner, Mrs. Ada Seely, [setting out the contract *in hæc verba,*] therefore

"*Be it resolved,* that this board accept the proposition of Mrs. Ada Seely as contained in the foregoing contract for the sale of real estate, and that this board make the purchase of said described land as a part of the school site for said district under the authority of said election and the statute in such case made and provided; that the president and secretary of this board be and they are hereby authorized to sign said contract in the name of the board of education of said district, and that one copy of said contract be retained by this board and that the original thereof be retained by Mrs. Ada Seely."

The minutes showed there was some discussion of the resolution by members of the board and other persons who were not members of the board. On a roll call three members voted for the resolution and two against it. It was declared carried, and the secretary of the board was authorized to issue a warrant for $1000 as part payment on the contract. The warrant was authorized by a vote of three to two.

At a meeting of the board on September 2, 1921, the minutes show the board had received information that the Standard Oil Company was making arrangements to secure a part of lot M for the purpose of erecting a filling station, and the board adopted a resolution that a notice in the words therein set out should be given the Standard Oil Company that the voters of the school district selected lots K and L and part of lot M for a school house site, and that the board planned to secure the property and erect a high school building thereon and use all the site so selected

315—13

by the voters for school purposes. The resolution to so notify the Standard Oil Company was adopted by a vote of three to two.

One of the grounds urged for reversal by appellant is, that the court erred in denying the motion to re-open the case and permit it to introduce evidence to show that the petition was not signed by one-fifth of the legal voters. Present counsel in the case did not represent appellant until April, 1923. Prior to that time appellant was represented by other counsel. Counsel now representing appellant presented their affidavits to the court November 5, 1923, in support of their motion to re-refer the case to take further testimony, and stated they could prove, or offered to prove, that at the time the petition was presented to appellant, March 30, 1921, for an election, there were 875 legal voters in the district, 175 of whom would be required to sign the petition before the board could legally call an election.

For a better understanding of the situation we will here make some repetition. The original bill was filed in July, 1922. A demurrer was filed in September but was withdrawn in December and an answer filed December 22, 1922, and on the same day the cause was referred to the master. The cross-bill was filed in April, 1923, and the issues under it referred to the master April 21, 1923. The master's report is signed and dated October 19, 1923, and after overruling objections to it and the motion to re-open the case and hear further testimony it was filed in the circuit court November 5, 1923. The taking of testimony before the master began in April, 1923, and the first time the question of the petition being insufficient because not signed by one-fifth of the legal voters of the district was mentioned was after the master had completed the taking of the testimony and made up and signed his report. It was not raised by the answer to the original bill or by the cross-bill. Fred H. Coriell, a member of the board, made

an affidavit to the petition for the election, stating he was
a legal voter of the high school district; that he saw the
signers to the petition sign their names; that they are gen-
uine; that the petition contains the names of 154 persons,
which constitutes one-fifth or more of the total number of
legal voters residing in the district, and that the district
did not contain more than 750 legal voters. At a meeting
of the board held March 30, 1921, all members present,
the board found and declared the petition was signed by
154 legal voters in the district; that the total number of
voters residing in the district did not exceed 760; that the
petition was signed by more than one-fifth of the legal
voters and was in·proper form. It was ordered that an
election be held April 9 to vote on the four propositions,
and notice was given of the election.

Counsel filed affidavits that they were retained in the
case in April, 1923, and since then had been sole attorneys
for appellant and had filed the cross-bill; that the taking
of evidence was concluded in June. The affidavit of W. J.
Reardon states he was unable to find the petition for the
calling of the election until May, 1923, and that the re-
spective parties had rested their case, and it was set for
argument before counsel was in possession of the facts he
desired to prove. The minutes of appellant show the peti-
tion was presented March 30, 1921, the number of voters
it was signed by, and that the number of legal voters re-
siding in the district did not exceed 760. The board found
and declared the petition was signed by the required num-
ber of voters and the election was ordered. Whether pres-
ent counsel knew the facts as to the petition before taking
the testimony was concluded or not, appellant knew it and
is not entitled to any indulgence if present counsel were
not informed. Present counsel filed the cross-bill April
14, 1923, but make no reference in it to any claim that the
petition for election was not signed by the required num-
ber of legal ,voters. The cross-bill alleges the contract with

appellee was entered into without legal authority and that the $1000 paid her was unlawfully paid. The answer to the original bill was filed before present counsel took sole charge of the case for appellant, and it made no reference to any claimed illegality of the petition on the ground that it was not signed by one-fifth of the legal voters of the district. Upon the showing made appellant was not entitled to have the case re-opened for taking testimony. The conclusion is clearly warranted that the defense sought to be made by the introduction of other testimony was not thought of by appellant during the long time the suit was pending until after the testimony was closed and the master had made up his report. During all that period appellant knew all about the petition and the district, and had ample time, if it had desired, to secure and produce the evidence which counsel asked to be given an opportunity to produce upon re-opening the case. No matter what the character of the evidence was, appellant was not entitled to have the cause re-opened to give opportunity to hear the testimony. The chancellor did not err in denying the motion to re-refer the case to the master.

The bill alleges the school site was selected at the election. Two sites were voted for. One site received 125 votes and the other 37 votes. The total vote cast at the election was 354, and neither site received a majority. The proposition to authorize appellant to purchase a site was carried, the vote being 175 for and 124 against. Thereafter appellant entered into a contract for the purchase of the property for a school house site. The decree finds no site was selected at the election; that the site was selected by appellant and became the legal and valid site of the school. The site was, in fact, selected by appellant. The voters, by a majority of the votes cast, authorized appellant to purchase a site but failed to select the site by a majority of votes cast at the election. The statute gave appellant the power to select it under those conditions, and its act

in contracting for the purchase of the property was a selection of the site. That the minutes of appellant state the site was selected at the election and that the judges and clerks of the election so reported does not alter or change the legal effect of appellant's act in selecting the site. The statute expressly confers the power upon a board of education to select a school house site under the conditions here stated. It was not an *ultra vires* act, and a mere irregularity in the manner of performing the act does not render it void. If a municipality exercises a lawful power it may be estopped to question the validity of the act on account of the manner in which it was performed. (*City of Chicago* v. *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* 244 Ill. 220; *Village of London Mills* v. *White,* 208 id. 289; *National Home Building Ass'n* v. *Home Savings Bank,* 181 id. 35.) We think appellant can not now be heard to question the validity of the contract with appellee because the site was not selected at the election.

It is further insisted the abstract furnished by appellee did not show merchantable title in her. The abstract was furnished and delivered prior to October 1, 1921, was given to the then attorney for appellant, who testified he pronounced the title merchantable and so advised appellant. The deed to appellant was delivered about December 24, 1921, and the attorney for appellant advised that it was good and sufficient. The attorney advised appellant, as $5000 of the purchase money was to be paid on or before March 1, 1922, to get a quit-claim deed from appellee after March 1, and was directed to secure such deed, and the deed was made. Appellant retained the abstract and deed until they were produced on the hearing of this case, when the objections now made were raised for the first time. Appellee was never notified of the objections now made, previous to the hearing. June 28, 1922, appellee, through her attorney, requested appellant to complete the performance of the contract on its part without delay. The bill

was filed July 25, 1922. The possibility of any trouble developing over the title is exceedingly remote, but appellant has by its conduct waived its objection that the abstract does not show merchantable title. Any defect in appellee's title was never suggested as a reason for not performing the contract until after the bill was filed, and the inference is warranted that no objection of that kind was a reason for appellant not performing the contract. Appellant's conduct justifies the conclusion that it had concluded not to complete the contract, but such conclusion was not based upon any objection to the title. It never informed appellee of the supposed defect, so as to give her an opportunity, if possible, to correct it. It was too late to raise the objection at the hearing. *Lang* v. *Hedenberg,* 277 Ill. 368; *Gibson* v. *Brown,* 214 id. 330.

It is also contended by appellant that appellee did not prove the case alleged in her bill; that the bill alleged the school site was selected by the voters at the election, and having failed to prove that allegation she was not entitled to relief. Under the facts proved we think appellee was entitled to the decree rendered under the general prayer for relief. Appellant, in the exercise of a lawful power, selected the site and made a legal contract with appellee for the purchase of the property. Where there is a general prayer for relief it is generally sufficient to support any decree warranted by the allegations of the bill and the evidence. *Walker* v. *Converse,* 148 Ill. 622; *Rankin* v. *Rankin,* 216 id. 132.

It is further argued by appellant that the petition for the election was invalid and the election void because four women signers of the petition signed their names as Mrs. J. A. Meyers, Mrs. H. C. Collister, Mrs. George Woodruff and Mrs. J. S. Watts. Appellant says the initials used are those of the husbands of the women, and the signatures were on that account illegal. That objection is too technical to have merit in a case of this character.

The names of four members of the board of education were signed to the petition, and appellant contends the petition was illegal for that reason. They were legal voters in the district, and their being members of the board did not disqualify them from signing the petition for the election.

No reason in law or fact is shown why the decree should be reversed, and it is affirmed.     *Decree affirmed.*